IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DORENZO MOORE, M42635,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **LATOYA HUGHES,** | ) |
| **CHAD JENNINGS,** | ) |
| **WILLIAM LOY,** | ) |
| **LT. OLINGER,** | ) |
| **LT. KID,** | ) |
| **C/O HAROLD,** | ) Case No. 25-cv-843-DWD |
| **C/O PURCELL,** | ) |
| **COUNSELOR HENDRIX,** | ) |
| **C/O KRICK,** | ) |
| **SGT. URLEY,** | ) |
| **C/O SHANES,** | ) |
| **C/O MILLER,** | ) |
| **C/O BROWN,** | ) |
| **JOEY LOGAN PUGH,** | ) |
| **TATUM DEMAY,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Dorenzo Moore, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Robinson Correctional Center, bring this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights via the failure of prison staff to provide safe drinking water for several years. (Doc. 19). The case was originally filed as a pro se multi-plaintiff action, but the plaintiffs have now opted to proceed independently and have each filed their own complaints.

Plaintiff Moore's Amended Complaint (Doc. 19) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that from April of 2023 to October of 2025 he has experienced frequent periods of contaminated or unsafe drinking water at Robinson. (Doc. 19 at 7). He alleges the water is often dark brown or rusted looking and it sometimes smells of sewage. In April of 2023 there was a boil order, but inmates were not provided any safe water source for days and thus were forced to drink the contaminated water. (*Id.*). Specifically, Plaintiff claims that from March 31, 2023, to April 13, 2023, Defendant Loy (a former warden) issued a boil order after severe weather but did not provide adequate drinking water the entire time. From June 26 to 29, 2023, the water was again brown. Plaintiff informed Defendants Harold and Purcell who "looked into it" but reported that there was no notice about hydrants being flushed or any other cautionary note. Plaintiff faults Harold and Purcell for failing to do anything. He alleges that for the same June 2023 incident he also spoke to Defendant Olinger during a walk through. Olinger promised to check into the issue but never reported back or implemented any preventive

measures. (Doc. 19 at 8). From April 21 to 26, 2024, Plaintiff informed Defendants Krick and Hendrix that the water was again brown. Krick said there was no boil order, though Hendrix reported the hydrants were being flushed. Plaintiff alleges he was not given alternative water.

On August 29, 2024, Plaintiff spoke to Defendant Jennings (warden) about the issue and Jennings witnessed the dark brown water. Jennings stated the water was safe to drink but provided no alternative. The problem persisted and after six days of discolored water Plaintiff informed Defendant Miller of the issue. He faults Miller for failing to document the issue or provide adequate water. (Doc. 19 at 9). From September 27, 2024, to October 9, 2024, the water was again brown. Plaintiff informed Defendant Urley who stated the hydrants were being flushed. No alternative water was provided. On October 22, 2024, Plaintiff reported brown water to Defendant Shanes and Shanes indicated hydrants were being flushed again and provided no alternative. The issue persisted through October 30, 2024.

From April 11 to 26, 2025, there was a boil order for Robinson and the surrounding town. Plaintiff alleges that notice was not posted until the last day, and when Jennings had notice posted in the dietary unit it was posted in Spanish, which meant most inmates could not read the notice. Plaintiff further alleges that during this time the Illinois EPA issued a notice about high levels of contaminants in the water. He alleges because the notice was not shared with the inmates, he was forced to drink contaminated water without knowing about it. (Doc. 19 at 11). From June 6 to 16, 2025, the water was again brown, and Plaintiff reported it to Defendant Brown. Brown indicated that all he could

do was place a work order, and later in the day Defendant Kid indicated inmates should simply keep the water running. Neither defendant offered an alternative. (Doc. 19 at 10).

Plaintiff alleges he filed numerous grievances about the issue. Often the response was that hydrants were being flushed, but Plaintiff faults Defendant Jennings for never providing notice of this or alternative water. As for Defendant Loy, Plaintiff indicates he at least notified inmates via memo, but he did not provide any alternative water. Plaintiff alleges that Defendant Hughes was also made aware of the issue via multiple detailed grievances. (Doc. 19 at 11). He argues that her responses show that she failed to investigate because she had knowledge of numerous Illinois EPA violation reports but did not take any corrective action.

Additionally, Plaintiff alleges that he submitted a FOIA request with a grievance that was received by Defendants Demay and Joey Logan Pugh (Illinois EPA). Plaintiff complained in the grievance about ongoing water problems at Robinson, and he complained that the prison was being given extensions to comply with a compliance commitment agreement that had been made with the Illinois EPA to remediate water issues at Robinson. (Doc. 19 at 11). Plaintiff faults Demay and Pugh as "administrators" of the Illinois EPA violations who have failed to ensure adequate remediation. He claims they did not hold wardens Loy and Jennings liable for fixing the issues identified. Plaintiff further complains that staff at Robinson only drink bottled water, which he believes is a sign they are aware of water contamination issues. (Doc. 19 at 12).

As a result of the contaminated water, Plaintiff alleges he is suffering diarrhea, stomach aches, headaches, chest pain, throat pain, skin irritation, and a lump in his

testicles.  He also complains of anxiety and depression related to the water issue.  (Doc. 19 at 12).  Plaintiff seeks punitive and compensatory damages.  In support of the amended complaint, he submitted grievance documentation and affidavits (of himself and others) chronicling the water issues.  In support of the original complaint, Plaintiff also submitted documentation he received from the Illinois EPA in response to a FOIA request.  The documentation is notable because it confirms that beginning in 2022 and continuing through at least 2024, Robinson was on a "Compliance Commitment Agreement" with the Illinois EPA to remediate violations.  (Doc. 1-1 at 1-43).

Based on the allegations in the Amended Complaint, the Court will designate the following claims:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Defendant Loy for failing to provide adequate drinking water from March 31, 2023, to April 13, 2023, after posting notice of a boil order; and for failing to respond to reported water issues thru at least August of 2023[1];**
>
> **Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant Jennings for failing to remedy the water issues at Robinson and for failing to provide adequate drinking water during the various outages in 2024 and 2025[2];**
>
> **Claim 3:** **Eighth Amendment deliberate indifference claim against Hughes[3] for failing to investigate and ensure remediation of alleged drinking water issues at Robinson from April 2023 thru 2025.**

---

[1] Plaintiff identifies Warden Loy as a former warden.  He does not indicate when Loy's tenure ended, but the last grievance response signed by Loy that Plaintiff submitted was signed on August 9, 2023.  (Doc. 19 at 20).
[2] Warden Jennings signed grievance responses in 2024 and 2025.  (Doc. 19 at 23-40).
[3] Hughes was a signatory on grievance responses all throughout 2023 to 2025.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### PRELIMINARY DISMISSALS

In addition to the defendants identified in the three enumerated claims, Plaintiff also named 10 prison employees that he interacted with on various dates in his housing unit.  Though his Amended Complaint does a better job describing the involvement these individuals had than the original complaint did; by associating each person with a discrete date, the Amended Complaint still reflects only minimal involvement by these individuals.  At most, Plaintiff alleges that he told Defendants Olinger, Kid, Harold, Purcell, Hendrix, Krick, Urley, Shanes, Miller, and Brown, each on one occasion that the water was discolored, and he was unsure if it was safe for consumption.  He got varied responses including that the individual would check into the matter, that hydrants were being flushed, that there was no active boil order, and that a work order would be placed. While these may not have been the responses that Plaintiff was hoping for, these one-off encounters with the individual correctional officers and lieutenants are not enough to give rise to deliberate indifference because in all but the most blatantly serious or harmful situations, a single encounter with a prison employee is generally not enough to form a basis for deliberate indifference.  See e.g., Owens v. Duncan, 788 F. App'x 371, 374 (7th Cir.

2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect … cannot support a finding of deliberate indifference"). Plaintiff also does not indicate that he informed any of these individuals that he had no alternative options for drinking water, or that he believed the water was making him ill. On the available information, the Court finds Plaintiff's allegations against Defendants Olinger, Kid, Harold, Purcell, Hendrix, Krick, Urley, Shanes, Miller, and Brown insufficient to state a claim.

Plaintiff also names Defendants Pugh and Demay, individuals that he identifies as employees of the Illinois EPA, whom he believes were responsible for overseeing water quality compliance at Robinson. He alleges he sent Pugh and Demay a grievance about the water at Robinson, but that they did not take any actions to fix the situation and granted Robinson extensions on deadlines in the Compliance Commitment Agreement, which allowed water problems to persist. He also faults Pugh and Demay for not holding Wardens Loy and Jennings to the standards set forth in the agreement. To the extent that Plaintiff is complaining that Pugh and Demay did not ensure the agreement was enforced, this alone does not give rise to a constitutional claim under § 1983 because a failure to follow internal policies or even state laws is not equivalent to a constitutional violation. *See e.g.*, *Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws or departmental regulations). Additionally, to the extent Plaintiff faults Pugh and Demay purely for failing to oversee the conduct of officials at Robinson, there is no supervisory liability under § 1983, so this theory is also insufficient to proceed. *See Mitchell v. Kallas*,

895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Finally, to the extent Plaintiff faults Pugh and Demay for their handling of his grievance, he provides no evidence about how they actually responded or if they even received his query. For the foregoing reasons, the Court finds the allegations against Pugh and Demay insufficient to proceed as pled.

## DISCUSSION

As the Court previously explained, the lack of appropriate drinking water in the prison setting can form a basis for a constitutional claim under the Eighth Amendment. The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The provision of adequate water is one of the requirements of humane conditions of confinement. *See e.g.*, *Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (collecting cases for the proposition that days-long deprivations of water can violate the Eighth Amendment). "[P]risoners are not entitled to Fiji Water on demand, but on the other end of the spectrum, a defendant cannot purposefully deny water until a prisoner is on the brink of death[.]" *Hardeman*, 933 F.3d at 823-24.

Conditions of confinement claims premised on access to water are very context specific. Indeed, "[n]othing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell[.]" *Jelinek v. Roth*, 1994 WL 447266, at * 2 (7th Cir. Aug. 19, 1994). Courts have concluded that a lack of acceptable running water in an inmate's cell may not violate the constitution if he has

access to drinking water in other areas of the prison. *Ramirez v. Beatty*, 1994 WL 758, at *3 (7th Cir. March 8, 1994); *Artis v. Neal*, 2025 WL 2773381 at * 2 (N.D. Ind. Sept. 29, 2025) (finding that an inmate adequately alleged a lack of drinking water when the only water was dirty, and smelled of sewage, and no alternative water was offered for days or weeks during lockdowns); *Sims v. Scanlon*, 2023 WL 4028984, at * 5-6 (S.D. Ind. June 15, 2023) (finding an inmate's claim sufficient to proceed beyond summary judgment where he alleged he was without water in his cell or had water that was contaminated, and who only got beverages at breakfast); *Williams v. Collins*, 2015 WL 4572311, at * 4 (N.D. Ill. July 29, 2015) (finding that an inmate stated an Eighth Amendment claim where he alleged he was without water in his cell, or had access to drinking water only 3 hours per day, had sufficient allegations to proceed beyond a motion to dismiss).

At this preliminary juncture, Plaintiff's allegations are sufficient to suggest that Defendants Loy, Jennings, and Hughes were aware of instances when he did not have access to adequate drinking water, yet they failed to act to remedy the situation. Though Plaintiff has set forth sufficient allegations and preliminary evidence to sustain this claim, the success of the claim will still rely on the development of significant evidence. Notably, Plaintiff will need to demonstrate the water was actually not safe for consumption, he did not have alternatives, and the physical ailments he describes are actually tied to the water issues and not to other health issues. He will also need to establish that each defendant exhibited deliberate indifference in their handling of the issue.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1, 2, and 3** of the Amended Complaint (Doc. 19) survives against Defendants Hughes, Loy, and Jennings.  By contrast, Plaintiff has failed to state a claim against Defendants Olinger, Kid, Harold, Purcell, Hendrix, Krick, Urley, Shanes, Miller, Brown, Demay, and Pugh.  The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Olinger, Harold, Purcell, Gurely, Krick, Hendrix, Urley, Shanes, Miller, and Pugh.

The Clerk of Court is **DIRECTED** to prepare for Defendants Latoya Hughes, Chad Jennings, and William Loy: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 19), and this Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will likely involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: December 17, 2025

/s/ *David W. Dugan*

---

DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.